Mr. Gabler, whenever you're ready. It pleases the Court. Good morning, my name is Mark Gabler and I represent the appellant Clayland Farms. Let me start by providing a little context that may not be readily apparent from the briefs. Clayland Farms is a family-owned entity. It's owned by Ms. Jean Bryan, who's in the courtroom with me today, and her brother, Mr. John Camper. This property was inherited by a brother and sister from their father and has been in their family since 1969. This is, in essence, a fight to protect their inheritance. The property is approximately 106 acres, located in Royal Oak, just outside of St. Michael's, Maryland. I'm not sure if any of you are familiar with that area or not. At the time the case was filed, and currently, it's located in the Village Center Zone, which provides for moderate density development. This case was filed primarily to challenge a group of three ordinances that were enacted and approved by the Talbot County Council, consisting of Bill 1214, 1257, and 1229. We refer to the first two as a moratorium. Bill 1214 prohibited properties in the Village Center Zone from subdividing any more than one lot, and that was a two-year moratorium. Bill 1257 was enacted February 25, 2014. Why do you think these challenges are ripe? They're ripe, Your Honor, because we are challenging three enacted and effective ordinances. These ordinances took effect 2012, 2014, and at the time of their enactment and effective date, which happens, I think, 60 days after they're enacted, at that point in time, affected and impacted my client. There was no further ongoing legislative process that these three bills related to. At the time of the enactment of Bill 1214, the restriction of one more lot was in place, and it was final. And it was to last as long as Bill 1214 was in place. That then was extended by Bill 1257. If you contend this is a regulatory taking, why didn't you exhaust your state remedies, such as inverse condemnation, as opposed to seeking just compensation? Well, Your Honor, we did file a case in the Circuit Court, which was removed to federal court, as you know. There are no other available state remedies for this particular kind of taking available to my client that I'm aware of. Not even inverse condemnation? No, Your Honor. We filed a takings case, which we felt was our only option in the Circuit Court for Tulba County, and that was promptly removed. And to the extent that that is an argument that is being raised by the defendants, we believe that by removing the case to federal court that they've, in essence, waived that argument under the Williamson County case and the following case, San Soto. So we believe that the court You say this is a facial challenge to that? Yes, Your Honor. Yes, we do. So one ordinance or more than one? It's three ordinances, Your Honor. Bill 1214 and 1257 were the moratorium. There was a follow-up bill, which was the adoption of the tier mat. And we are challenging the effect of those three, which caused a very significant impact and restriction on my client's ability to use, develop, and go forward with the subdivision of their property. Is your challenge at count one an as-applied challenge? No, Your Honor. These are not as-applied challenges. These are facial challenges. We talk a lot in the complaint about the manner in which and the significant impact that these ordinances have on my client's property, and that's, in effect, why we filed the lawsuit. Our position is that the mere enactment and the mere passage of this moratorium, which is based on nothing more, in our view, than an attempt to preemptively stop everything. So it's not a status quo moratorium. It's the taking away of the status quo. Our client has village center zoning. Our client has sewer service designation that would allow them at the time to go forward with a subdivision application and seek as many lots as they can get, up to four per acre, under the village center zoning. And with the passage of this moratorium, it immediately and effectively deprived them of that. And this is in advance of and while they go through with their comprehensive planning process, which they've recently completed, and then ultimately follow that with their comprehensive zoning process. I'd rather call it a comprehensive downzoning process because I believe that that's been the intent from day one. So what this moratorium, what these bills have done, have taken away what our clients have, as if the county already knows what it's going to do in its comprehensive planning process and its comprehensive zoning process. There's no way it could know that. And I don't see under... Correct, Your Honor. There's no vehicle for that. The variance... But the argument isn't that they've already set in place what's going to happen. For your claim to the challenge, at least I think the first three counts is, is the facial challenge that they're depriving you of a right because they affect your property. And you have no way to have that addressed. The statute doesn't provide for anybody to get any redress from that. That's right, Your Honor. And not only that, the county has an existing variance process which would not allow us to seek relief. It has a waiver ordinance that also specifically would not allow us to seek relief. So our only alternative was to come forward. I do believe that there is evidence that we... Oh, I know, I know, but it's not necessarily for your claim, for the rightness claim. Thank you, Your Honor. I mean, isn't that right? Yes, Your Honor. Because you think, let's underline this, you think that the county doesn't want you to do what you thought you should be able to do, and you all are just fighting through the process, but you think that's what's really going on. Absolutely, Your Honor. And the fear was, as is evidenced in the record, that there would be some kind of a race to the planning and zoning office to get some approvals, which I think property owners have every right to do. If not, if what we're saying is the county has to go forward with a comprehensive planning process every 10 years, and if they can enact these moratoriums, you know, five years before they begin their next 10-year cycle, well, then you're reducing the effective rights of the landowners to the zoning that they have to a very short period of time. Well, if this is a facial challenge, it wouldn't – your claim would be right without exhausting the remedies because you're challenging the public use claim, right? I'm sorry, Your Honor. I'm not – The exhaustion requirement on a facial challenge does not apply to challenging the validity of the law. That's correct. So it would be right. It would be right upon the enactment, and we've cited the Sweden v. Tahoe Regional Planning Agency case as one of the cases that stands for that proposition. So I believe that the district court, when looking at the motions, somehow must have accepted or believed the arguments that were being made that what this really was was not a challenge to these three ordinances, which is what the complaint says it is, but rather that this was some effort to interfere with an ongoing legislative process. It's not. These are completed legislative processes. These are enacted effective ordinances that affect our clients the moment they take effect and which preclude them from moving forward. There were several other arguments which we've attempted to address in our briefs beyond the ripeness. Frankly, from my point of view, if the case is not ripe, as the judge found, then I don't think it was appropriate, nor do I think the court intended to go forward and make substantive rulings on any of the other claims. He said very clearly in his decision it's being dismissed on the ground that the issues are not ripe for adjudication, and then he proceeded to enter a one-line order that says it's dismissed as presenting issues that are not ripe for adjudication. He made some other comments in his ruling, such as it's beyond the court's competence to make zoning decisions, it appears the Tulba County Council was required to take the action that it did, et cetera. But if the case is not ripe for adjudication, then he shouldn't be making those substantive rulings because I think that's an inconsistent position for the court. I think perhaps the court was just trying to help the litigant sort of understand other issues as he sees them in the case. I think it looks to me like he's trying to be helpful to everybody. But didn't he footnote, why don't you think about your state remedies or something? He's just trying to be helpful. Yes, Your Honor. I don't disagree with that. I just wanted to point out that it looks like the police have taken some of those statements or are trying to take those statements and ask the court to make some additional, find some additional way to affirm the dismissal of this case. We would like an opportunity to present our case, present our evidence on these issues. We'd like an opportunity to go through discovery and see what we can find in addition to what we already have found through the public records and allow the court to make a decision on the merits of these claims. Do you need any discovery on the ripeness question? No, Your Honor. No, no. We're asking the court to simply vacate the decision and send it back to the district court for a trial. We weren't able to move forward on any grounds because the motion to dismiss was the first thing that we had to contend with. And once the court made its ruling, we were on our way up to this court. So with that, unless the court has any additional questions, I'll sit down and come back for my rebuttal.  Thank you, Mr. Gabler. Thank you. All right. Let's hear the argument on behalf of Talbot County. Good morning, Your Honors. Paul Cucazzella with the Maryland Office of the Attorney General on behalf of the Maryland Department of Planning. I'll be brief so you can hear from Ms. Scheer on behalf of Talbot County. Clayland Farm alleges no cause of action against the Maryland Department of Planning because the plaint specifically, Count 5, which is the only one with respect to MDP, points to no failure by the department to comply with any sort of statutory requirement. Under the 2012, Maryland's 2012 Sustainable Growth and Agriculture Preservation Act, counties were encouraged to adopt what the act called growth tiers. And the act defined four different tiers and provided criteria based upon current. What role does the commission, you said it's commission. What do they have in the whole process? The Maryland Department of Planning. The role is very limited. But what is it I said? As an advisory and consultive agency which is consistent with the department's. Does their input have anything to do with the outcome in a case against a property owner? I'm sorry, Your Honor. Does their input bear any weight, have any relevance at all to the outcome of the tier planning or the zoning planning or any of that? The only. And if it does, why shouldn't they be in this case? The only effect that the department can have on the ultimate adoption of a county's tier map is at the point where after the county actually adopts the map, signs an ordinance, enacts an ordinance adopting the map, the location of the tiers are then forwarded to the department. The department then has an opportunity to comment on the county's map. What if they say we think that's improper under the law? If the department were to provide such a comment under the land use article, the county would then be required to hold a public hearing on MDP's comment. But the important part is that the county would not be required to change its map in any way based upon MDP's comment. But it's possible that if the ordinance is clearly violative of Maryland law, the planning board, I don't know. Planning department. Department of Planning, Your Honor. Could force a public hearing on it. But there's no requirement that it do so. The statute is very clear. What do you mean by no requirement that it do so? The department. There's no requirement. No, no, but I didn't ask you that question. I'm just trying to get it straight. This is a hypothetical. What if a jurisdiction did something that the planning body thought was absolutely contrary to state law? I'm sure they would so know and tell the jurisdiction that, wouldn't they? They could and they have. They wouldn't? No, they could and they have. In my hypothetical, if the board saw it was clearly violative of state law, wouldn't they notify that jurisdiction? They could. They are not required to. So in other words, they would, the board, what kind of board is it? The Department of Planning. It's a state department. I know that. But if they knew it was clearly violative of state law, they would just, they have the option to do nothing? They do have the option to do nothing because the statute doesn't require them to make a comment. The statute doesn't require that the department make a finding as to whether the county's tiers are consistent with the statutory criteria. Wait a second now. I want to be sure of what you're saying. You're standing here and representing for the state that for all this planning in the state of Maryland, just because the board doesn't object doesn't mean it meets any kind of state law requirements. Because you say the board can look at a plan that's absolutely 100% in violation of law, maybe even so stated in the ordinance itself. We hereby pass the ordinance. It's violated of state law. And this planning group can do nothing? Correct, Your Honor. They could comment. They keep their jobs? Because, Your Honor, under Maryland state law, under land use and planning in Maryland, the state has delegated land use and planning to local governments. So the way that this act was constructed to the planning body to review it, what mission does the planning board, I'm not using the right term, tell me what it is. Department of Planning. What function is delegated to the Department of Planning? To look at stuff and do nothing else? Under the state finance and procurement article and the statutes that are cited in the brief, the role of the department is an advisory one. No, no, no. Advise as to what? Advise as to advise local governments on comprehensive planning, on other issues related to state planning. Do they have any obligation in their advised function to advise what you're doing is clearly, absolutely 100% contradictory to Maryland law? They don't have that obligation? Under this specific act, the act does not put the department in that position, doesn't invest that authority upon the department. The department only has the ability to comment if it so chooses. The comment is you're absolutely violating Maryland law. And sorry, but you, small county, for instance, you just haven't done it right. You can't. Our best view is on this, our comment is what you're doing is absolutely violative of Maryland law. They wouldn't do that. And what I'm saying, Your Honor, is they could, but the statute doesn't require it. It's common sense for them to do that. But it's consistent, it's consistent, Your Honor, with the broader view of land use and planning in the State of Maryland, where the local governments control land use and planning. And the Department of Planning is only there in an advisory capacity. So in this instance, what happened was there was no comment was made back to the county which would have forced a public hearing on the adopted plan, and therefore no public hearing was held. And even if public hearing was held, there's no requirement that the county alter its plan in any way or alter its map in any way to conform with that comment because the state law doesn't vest that authority with the state. Thank you for me. Thank you. All right. Ms. Shearer. Good morning, Your Honors. May it please the Court. Victoria Shearer on behalf of Tulsa County Defendants and Appalachians. I had an argument prepared as to why clay lands, as applied claims, were properly dismissed as unripe. But then Mr. Gabler came up here and told you that he didn't make any as applied claims. Well, this is taken for purpose of the argument that they're making a facial claim because that's what I thought he was making. He confirmed that's what he's making. So you don't have any argument on that point? Well, I can move forward and not address it if that's what you like, Your Honor, but I would point out. No, he's made a facial claim. I thought he made a facial claim. That's what I thought. Well, the complaint says differently, Your Honor. The complaint says right here at paragraph 142, well, in counts 1 and 2, it doesn't say what type of claim it's making, but all the allegations are of how the legislation that's non-final allegedly applies to the property, and then finally at paragraph 142 within count 3, which is a substantive due process claim, it finally says facially and or as applied to plaintiff's property. And so plaintiff created the confusion. Stop talking when I talk. I get to ask the question. If you want to make your argument that he's wrong, it's not a facial challenge, and you want to argue it is as applied, you certainly may do that. You know, I'm looking at his brief on page 12. It says count 1 asserts a facial challenge. That's what I was going to. Well, that's what he's saying now in his brief. Well, no, but don't. You actually surprised us this morning to find out that it's a facial challenge, and I don't understand that. Okay. Well, Judge Motz dismissed it on the basis of lack of rightness because I think he understood it to be an as applied challenge as well. But moving on to facial challenge, to the extent it's a facial challenge, the district court would have jurisdiction to address it because it's right. So I think that to the extent that Judge Motz made a comment saying that there were reasons for why the county needed moratorium bills in order to have time to comprehensively plan, I know that it's not a holding per se of the court and it's confusing in the way that he stated it, but I think that he's absolutely right because it's very clear under Tahoe-Sierra that moratoria are valid planning tools so that local governments can comprehensively plan, which takes time. And in this case, that's exactly what they were doing. Clayland says, well, there's no emergency that required a moratorium during the planning process, but there doesn't have to be an emergency. Tahoe-Sierra says it right there. It says that they can do this in order to have time and to maintain the status quo during the comprehensive planning process. That time is not unlimited, though, is it? I'm sorry, Your Honor. Can I hear? I said that time is not unlimited. No, it is not unlimited, Your Honor. What Tahoe-Sierra said is that the three pen central factors apply in order to  the duration alone of a moratorium is not the manner in which to determine its validity, but those three pen central factors. And so if you read the complaint and you accept all allegations of the complaint as true, the facial claim against the moratoria, it fails because plaintiff does not allege any economic impact of the regulation. First of all, they did not submit any plan or any application to develop the property. So they make a vague allegation in the complaint about wanting to put a couple hundred homes on the land, but there's no application or plan for that. So I noticed that Mr. Gabler made a comment to the effect that there's a race to the permits office or something like that. And in Tahoe-Sierra, if you read that case, you'll see that when they're talking about the validity of moratoria to maintain the status quo, they're saying the reason that that's valid is in order to stop developers from racing to the planning department. You may be making a very good argument, but if this is a facial challenge, and why shouldn't you be making that first to the district court? Why shouldn't this argument be made first to the district court on a ripe challenge rather than have him dismiss it as being not ripe? We did make this argument in the district court. I know that. No, but I mean make it to him in the context that it is ripe, not in the context, as he ruled, that it's not ripe for him to consider all this. Isn't that what we would normally do? If the district court goes the challenge is not ripe, it's dismissed. And if we were to, you're now saying, okay, you're making an argument as if it is ripe, and you're making an argument to us, why wouldn't we send it back to him and let you make these arguments to him and let him rule on them for us then to review if we had to again? Well, it would be more efficient for this court to rule based on the fact that it can affirm on any basis. And also, Mr. Gabler says he's entitled to a certain zoning category. He's not. He has no vested rights. The legislative body of Talbot County can change the zoning of the property. He has no vested rights that protect him against a change of zoning under Maryland law. Moreover, he says, well, I should have discovery. Well, the discovery he's talking about is to explore legislative motives, he says, that the anti-growth county officials have. I'm thinking in terms of how the courts proceed. I'm just thinking of what the ramifications of what you're saying would be. If I was a district court judge, which I was, all of us were, I'd like you to have a theory. Then on every case that came in front of me, I would go, it's not right. Make all those arguments to the Court of Appeals. I would probably add something like, because they're very smart judges up there, and just let them handle that in the first instance. But that's really not what we do. I understand. I understand exactly your point. You think you laid that out below and you think you're right on the issue and you wish a court would go ahead and give you a detailed win on that if you're entitled to win on if the claim is ripe. I understand that. But it seems to me the process would almost without fail go back to the district court. Let's assume that you're right that the just compensation claim and the count two ancillary procedural due process claim are unripe. One, because of a failure to exhaust state remedy. As to the other counts, why aren't they ripe? I didn't argue that they were not ripe. So they should go forward, right? If the challenge is to the moratorium itself and it's a facial claim, then yes, it's ripe. That's why we asked the district court to also hold that the moratorium was valid and we gave all the reasons. I mean, the cases say it's an uphill battle and it has to deprive the landowner of all economically viable use of the property. The case law also says that it has to be invalid in every possible application of the statute. And plaintiff admits at page 38 of their brief that they can develop the property, they can subdivide. They just don't like the amount of subdivision they're allowed to do under the moratorium. But clearly they admit and acknowledge that this statute has at least one valid application. It also has valid application to multiple other properties throughout the county. And so why shouldn't this court, for the sake of efficiency and saving judicial resources, go ahead and rule on the facial validity of the moratorium? The moratorium isn't even over. The county did just adopt the 2016 comprehensive plan a couple of months ago. So that part is done. I'm sorry to interrupt you, but I don't think we can change that judgment without a cross-appeal. In other words, I know you want us to get to the merits, but the judge didn't rule on the merits and I'm not sure our rules would permit us to get to those issues. I understand. I understand what you're saying. I'm not sure what else I can say. I mean, I've had other cases where there's been a facial challenge to a statute and the courts look to the legislative purpose as stated in the bill or statute itself. And so clearly it was correct for Judge Motz to make the observation that he did in his memorandum opinion that there was good reason for this moratorium. And all of the case law supports it and none of the case law supports invalidation of the moratorium under the three Penn Central factors. And so I understand what you're saying, that it needs to go back to Judge Motz and I should make these arguments to him again, as I did before. But we'll tell him you spoke highly of him. I do think highly of Judge Motz. Are you saying that the moratorium is now over? The moratorium is still in effect until legislation is enacted once the code is That's the way it works is first you adopt the comprehensive planning documents and then you hire one of those consulting firms to rewrite your zoning code. And then it gets to public hearings and it goes to the county council to vote on eventually. Are you saying he has to wait until that's done before his claim is right? No, I didn't argue that the claim was not right. It's just that all along the claim was understood to be as applied. And I think that the way that it was played in the complaint is what created the confusion. Are there any other questions, Ron? Do you have any other questions? I do not. Thank you. Thank you. I appreciate it. All right, Mr. Gabler, you have some time in reply. Thank you, Your Honor. I'll be brief. Let me start with commenting on some of Ms. Shearer's comments. I want to just be clear. Vested rights is not an issue in this case. Our contention is not that at some point through the proper planning and rezoning procedure that the county is without the ability to change the zoning of our property. What we contend is that they don't have the ability to take away our right to use our current zoning until such time as they get down the road for that purpose. We've challenged this moratorium. We've challenged it as not being based on any proper government purpose other than just to give them time to do what they want to do with this property. And we believe that when all of the facts come out and when the court examines this moratorium and the purpose, there's no purpose set forth in these ordinances. It just says we're doing it. Let me ask you this, Mr. Gabler. What in your complaint shows clearly this is a facial challenge? I think the word facial is in the complaint. I'm not exactly sure where that exists, Your Honor. But I recognize that we may not have said that as many times as we should have. It's not as applied, clearly, because there's no particular decision that was applying the ordinance we're challenging to our property, which is required in an as applied challenge. So, in effect, it couldn't really be an as applied challenge because once these ordinances were enacted, they were enacted. Once the moratorium was passed and said you can only develop one lot, then that's where we are left with. And we explained when Ms. Shearer, in her motion to dismiss in the district court, argued that the case was not right, we explained it was a facial challenge. We've been explaining it throughout these arguments in the district court. We've explained it in our brief. And I believe if you read through the allegations, you would agree with us that we are arguing that the mere enactment, the mere passage of these moratoriums without proper purposes makes it a facial challenge. And I don't believe that Tallahassee Area stands for the proposition that a zoning is required just to do its planning. I do believe there's language in that case that talks about it being a proper planning tool in certain circumstances. That doesn't mean that they can do it without a proper purpose. Here there is no proper purpose. The proper purpose is to, as I've said, preemptively deprive my client of what it is entitled to, and that is to use the zoning that it has, that it currently has now. We don't know what the county is going to do with the rezoning. The county may look at the comp plan and say, we're going to keep this property just like it is. Well, why are we having to wait five years, ten years? It could be 15 years. Who knows how long it's going to be? Let me go back to the question. Yes, Your Honor. I'm looking at your complaint. Allegations 132 and 133, which read, the village growth moratorium has had and continues to have a substantial negative economic effect on plaintiff's property and has caused plaintiff to lose significant value in the property without receiving any compensation. 133, the village growth moratorium has interfered with and continues to interfere with plaintiff's reasonable investment-backed expectations to subdivide and develop this property in accordance with the plaintiff. Yes, Your Honor. Why isn't that an as-applied? How would a normal reading of that be that this is an as-applied? Your Honor, those allegations, as I understand them, are the allegations that support our takings claim. That what? That support our takings claim. Right. But we believe you can look at these ordinances separate and apart from its impact on Clayland Farms property and you'd have the same deficiencies. You'd have the same constitutional challenges. No one has the right to go and seek any relief or redress from the county from the moratorium. It just is what it is. If I may just comment briefly on the Department of Planning questions that the statute allows MDP to make comments. I agree it's a strangely written statute. It doesn't appear to have a lot of teeth in terms of what MDP can or can't do. They clearly are allowed to review maps and they clearly are allowed to offer comments, and they are required when they offer comments to publicly disclose those comments. Are there any state law claims that you could make that would be right? Well, I believe that all of the claims that we have made are right. I believe that the last four accounts, which are not based on the takings and the substantive due process claims, there are two declaratory judgment claims. There's an injunctive relief claim that all fall under state law, which we believe are right. And the court, Judge Motz, did not seem to go through each count and explain why this count was right. We just seem to lump them all together into the same category. Going back to MDP, their initial comments on the map of Talbot County, which proposed to put this property into a tier four category, which is defined in state law as properties that don't have sewers. Why do you think they should remain in this? It sounds like, according to them, they have the complete discretion to do anything or nothing within their purview. They have some discretion, Your Honor. When they make comments, the statute requires them to publicly disclose those comments. There are comments that were made to the Talbot County map that said, you are improperly, incorrectly designating the Clayland Farm property. The property has sewer service. It should be in a tier one category. Those were identified as informal comments from MDP to the county and were not publicly disclosed. Yes, if those comments were disclosed and there was a public hearing held. The argument is there are nothing such as informal comments. Exactly. You think any communication under the law is a comment. You would like to have that comment, of course, but you think then it mandates a hearing at which time you can raise that point? Yes, Your Honor. Perhaps the county would be moved to do something different. Perhaps they wouldn't. Perhaps they would still keep us in the tier four designation, which is a designation that strictly. They could explain away. They don't have to respond to those comments other than by way of hearing. Perhaps. But perhaps it would have caused them to do something different. But when MDP decides to offer a comment which says, in effect, you're not complying with the law. No, wait now. I don't think your claim there is determined on that the county has to do anything about it or that they have to amend. No. I think your only claim is that there would have to be a hearing. Yes, Your Honor. And I think that's important when the state agency is offering a comment and that the statute requires those comments to be public. Thank you. Thank you very much. All right, thank you. We'll come down and greet counsel, and then we'll go into our next case.
judges: William B. Traxler Jr., Dennis W. Shedd, Henry F. Floyd